UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

LUIS UZAGA ALBEAR,
Petitioner,
v.
MARKWAYNE MULLIN, Secretary of the Department of Homeland Security, et al.,
Respondents.

Case No.: 26-CV-4151-JAO (BJW)

**ORDER DENYING IN PART AND GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

(ECF No. 1)

Presently before the Court is Petitioner Luis Uzaga Albear's Petition for Writ of Habeas Corpus. ECF No. 1. Also before the Court are Respondents' Return to Petitioner's Habeas Petition, ECF No. 5, and Petitioner's Traverse, ECF No. 6. For the reasons set forth below, the Court **DENIES IN PART AND GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner is a Cuban national who was ordered removed to that country on April 6, 2026, and has been in immigration detention since July 2026. *See* ECF No. 1 at 2–3; ECF No. 5 at 2.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district

of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

### A. Petitioner's Detention and *Zadvydas*

When a non-citizen is ordered removed, they must be detained for ninety days (90) pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(2). This ninety-day period is referred to as the "removal period." § 1231(a)(1)(A). After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A six-month period of post-removal order detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the petitioner's release may be conditioned on any of the various forms of conditioned release. *Id.* at 700.

Petitioner argues that even though the presumptively reasonable six-month period has yet to lapse, he has met his burden to rebut that presumption because (1) Cuba is considered uncooperative with repatriations, (2) ICE has failed to obtain any travel documents for Petitioner since he was ordered removed, and (3) there are news reports that the United States is considering military action against Cuba. *See* ECF No. 1 at 12.

At this point, those general facts standing alone fail to demonstrate there is no significant likelihood Petitioner will be removed in the reasonably foreseeable future. Crucially, Petitioner fails to account for the possibility of removal to a country other than Cuba, except to argue that ICE cannot remove him to a third country without sufficient process. *See id.* at 13–16. The Court agrees with the latter point as discussed below, but because Petitioner's detention has not crossed the six-month threshold, and his evidence fails to demonstrate a lack of potential for removal, the Court DENIES Petitioner's request for immediate release without prejudice.

**B. Third-Country Removal**

Based on ICE's current policy regarding notice and third country removal, Petitioner argues that if Respondents are able to identify a third country and attempt to effectuate that removal, Petitioner would face removal without adequate notice or an opportunity to be heard in violation of the Due Process Clause, the CAT, and implementing regulations. *See* ECF No. 1 at 13–15. Respondents do not address this argument.

In support of his Petition, Petitioner includes a July 9, 2025 memo from ICE Director Todd Lyons ("ICE Memo") titled "Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025)." *See id.* at 21–22. The ICE Memo provides:

> If the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed without the need for further procedures. ICE will seek written

> confirmation from the Department of State that such diplomatic assurances were received and determined to be credible.... In all other cases, ICE must comply with the following procedures:
>
> > - An ERO officer will serve on the alien the attached Notice of Removal. The notice includes the intended country of removal and will be read to the alien in a language he or she understands.
> >
> > - ERO will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal.
> >
> > - ERO will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal. In exigent circumstances, ERO may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal.
> >
> > - Any determination to execute a removal order under exigent circumstances less than 24 hours following service of the Notice of Removal must be approved by the DHS General Counsel, or the Principal Legal Advisor where the DHS General Counsel is not available.
> >
> > - If the alien <u>does not</u> affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours, ERO may proceed with removal to the country identified on the notice. ERO should check all systems for motions as close in time as possible to removal.
> >
> > - If the alien <u>does affirmatively state</u> a fear if removed to the country of removal listed on the Notice of Removal, ERO will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under section 241(b)(3) of the INA and the Convention Against Torture (CAT). USCIS will generally screen the [noncitizen] within 24 hours of referral.

*Id.*

The Court agrees with those other cases that have concluded that the procedures laid out in the ICE memo contravene Ninth Circuit precedent and likely violate due process. *See Azzo v. Noem*, 2025 WL 3535208, at *7–8 (S.D. Cal. Dec. 10, 2025); *Esmail v. Noem*, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025). *Azzo* succinctly summarizes recent case law that the Court finds persuasive:

> As several courts have held, the policies in the ICE memo are "contrary to Ninth Circuit precedent." *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases). A "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Nguyen v. Scott*, — F. Supp. 3d —, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). "Both the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims." *Nguyen*, 2025 WL 2419288, at *18 (quoting *Aden*, 409 F. Supp. 3d at 1009). "Failing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).
>
> The court in *Esmail v. Noem* analyzed how the policies in the ICE Memo "present due process issues." Case No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025). First, when the third country "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured . . . the alien may be removed *without the need for further procedures.*" *Id.* at *7 (emphasis in original). Because "the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims, this approach is insufficient." *Id.* (cleaned up). Second, when the third country has not provided such assurances, ICE "will not affirmatively ask whether the alien is afraid of being removed to that country." *Id.* This "forces the noncitizen to assert a right he may not know that he has," which "'violates both INS regulations and the constitutional rights to due process.'" *Id.* (cleaned up) (quoting *Andriasian*, 180 F.3d at 1041).

*Id.* at *7–8. The Court adopts the reasoning and conclusion of *Azzo*, and those cases on which it relies. *See also Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1114–16 (W.D. Wash. 2025); *Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1186–89 (E.D. Cal. 2025); *Esmaeili v. Noem*, 2026 WL 240661, at *6 (S.D. Cal. Jan. 29, 2026).

Thus, the Court GRANTS the Petition regarding third country removal process.

## CONCLUSION

Based on the foregoing, the Court **DENIES IN PART AND GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1). The Court DENIES without prejudice Plaintiff's request for release but GRANTS the Petition as to third country notice. Thus, Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard, following the process laid out in *D.V.D. v. United States Dep't of Homeland Sec.*, 2025 WL 1453640 (D. Mass. May 21, 2025).

**IT IS SO ORDERED.**

Dated: August 20, 2026

Jill A. Otake
United States District Judge